UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID C. PATKINS,<br><br>            Plaintiff,<br><br>     v.<br><br>A. LISK,<br><br>            Defendant. | Case No. 16-cv-04347-EMC<br><br>**ORDER DENYING MOTION TO DISMISS; AND REFERRING PLAINTIFF TO FEDERAL PRO BONO PROJECT FOR LIMITED SCOPE APPOINTMENT**<br><br>Docket Nos. 11, 12 |

## I.      INTRODUCTION

David C. Patkins, an inmate at the Correctional Training Facility in Soledad, California, filed this *pro se* civil rights action under 42 U.S.C. § 1983. This matter is now before the Court for consideration of correctional officer Lisk's motion to dismiss and Mr. Patkins' motion for appointment of counsel.

## II.      BACKGROUND

Mr. Patkins' complaint alleges that correctional officer (C/O) A. Lisk retaliated against him because Mr. Patkins exercised his First Amendment rights. The complaint alleges the following: Mr. Patkins has worked as a morning cook at the prison since April 2014, and C/O Lisk has worked in the culinary department but is not his supervisor. C/O Lisk verbally insulted Mr. Patkins for a long time. On November 10, 2014, C/O Lisk called Mr. Patkins a thief when he was putting an apple in his lunch bag. He complained to C/O Lisk that she was constantly harassing him. They argued, and Mr. Patkins said he would file a complaint if she kept harassing him. Because of this, C/O Lisk thereafter retaliated against him in numerous ways. Her retaliatory actions included causing Mr. Patkins to get the worst job assignments; occasionally causing him to miss his meals; occasionally causing him to miss work; on several occasions

writing false rule violation reports against him; denying him access to priority ducats for mandatory appointments; and trying to get his cellmate to move out. Mr. Patkins wrote several inmate appeals during the course of the retaliation, but these did not end C/O Lisk's retaliatory efforts.

The Court conducted an initial review of the complaint as required by 28 U.S.C. § 1915A, and determined that the complaint states a cognizable claim. The Court wrote: "Liberally construed, the *pro se* complaint states a cognizable claim against C/O Lisk for retaliation, as she allegedly took numerous adverse actions against Mr. Patkins in response to both his statement of intent to file an inmate appeal and the inmate appeals that he did file." Docket No. 4 (Order of Service) at 4.

C/O Lisk now moves to dismiss the complaint on the grounds that (a) the complaint fails to state a claim upon which relief may be granted and (b) she is entitled to qualified immunity. Mr. Patkins opposes the motion to dismiss.

Mr. Patkins also requests that counsel be appointed to represent him in this action.

### III. **DISCUSSION**

A. Motion To Dismiss

1. Rule 12(b)(6) Standards

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief can be granted." A motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). The Court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must construe *pro se* pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010). The Court need not accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended*, 275 F.3d 1187 (9th Cir. 2001).

2.      <u>The Elements Of A Retaliation Claim Are Adequately Pled</u>

An inmate has a First Amendment right to file grievances against prison officials without being subjected to retaliation in response thereto. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

C/O Lisk argues that the complaint fails to state a claim because (a) the causation element is absent in that the allegedly retaliatory conduct occurred *before* Mr. Patkins began filing grievances, (b) C/O Lisk's actions served a legitimate penological goal, and (c) the allegedly retaliatory conduct did not have the requisite chilling effect. None of her arguments persuade the Court to dismiss the complaint.

<u>Causation:</u> A prisoner must show a "causal connection between the adverse action and the protected conduct." *Watison*, 668 F.3d at 1114. Mere speculation that a defendant acted out of a retaliatory motive is not enough. *See Wood v. Yordy*, 753 F.3d 899, 904-05 (9th Cir. 2014) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit). "[T]iming can properly be considered as circumstantial evidence of retaliatory intent," although timing alone is not enough to support a finding of retaliation. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). An adverse action taken by a prison official before an inmate engages in his protected speech is not an action taken "because of" that protected conduct. *See id.* "[F]ar from establishing" that the adverse action was in retaliation for the protected conduct, adverse action taken before the protected conduct "leads . . . to the opposite conclusion." *Id.* (district court erred in finding that transfer was retaliatory where the evidence showed that the transfer board had convened to transfer the inmate three days before the prisoner gave a television interview and more than a week before the interview was broadcast).

C/O Lisk selectively focuses on certain allegations in the complaint to make her argument

that the retaliatory conduct predated the protected conduct and therefore could not have been caused by the protected conduct. She argues that each of the three administrative grievances filed by Mr. Patkins directly followed Mr. Patkins receiving a rule violation report ("RVR") for stealing food or other misconduct.[1]

C/O Lisk reads Mr. Patkins' complaint far too narrowly. Whereas C/O Lisk wants to confine the retaliation inquiry to the three RVRs, Mr. Patkins' complaint alleges retaliatory conduct that was much more widespread and started earlier in time. Mr. Patkins alleges that, after C/O Lisk had been bothering him, he spoke to her for the first time on November 10, 2014, and stated "'you constantly harass me. If I deserve a scolding, or a write-up, then fine, but *if you keep harassing me I'm going to file a complaint*." Docket No. 1 at 7 (emphasis added). At that point, Mr. Patkins allegedly had engaged in protected conduct. "[T]hreats to sue fall within the purview of the constitutionally protected right to file grievances." *Entler v. Gregoire*, No. 14-35053, slip op. at 17 (9th Cir. Oct. 6, 2017). The complaint reasonably can be read to describe a campaign of retaliation by C/O Lisk after Mr. Patkins' November 10, 2014 protected conduct of threatening to file a complaint; Mr. Patkins alleges retaliatory acts that continued for several months, during which Mr. Patkins engaged in additional First Amendment activities of filing inmate grievances, to which C/O Lisk responded with more retaliation. Among other things, the complaint alleges

---

[1] C/O Lisk points to the chronology of events for these three RVRs alleged in the complaint:

<u>1st RVR</u>
December 22, 2014    food theft occurs and Mr. Patkins is notified he will receive an RVR
December 30, 2014    RVR is issued
January 20, 2015     Mr. Patkins files a grievance

<u>2nd RVR</u>
April 5, 2015        Mr. Patkins disobeys an order and is notified he will receive an RVR
April 7, 2015        Mr. Patkins files a grievance
April 11, 2015       RVR is issued

<u>3rd RVR</u>
July 19, 2015        food theft occurs
July 28, 2015        RVR is issued
August 3, 2015       Mr. Patkins files a grievance

*See* Docket No. 1 at Exs. A-C; Docket No. 12 at 4.

that C/O Lisk: caused Mr. Patkins to get the worst job assignments; occasionally caused him to miss his meals; occasionally caused him to miss work; denied him access to priority ducats for mandatory appointments; tried to get his cellmate to move out *AND* issued three false RVRs. *See* Docket No. 1 at 7-11. Moreover, although C/O Lisk views each RVR as a stand-alone event -- as though all alleged ill-feelings between her and Mr. Patkins disappeared after each one -- the complaint alleges an ongoing series of retaliatory incidents. The complaint sufficiently alleges the requisite causal connection, i.e., that "a state actor took some adverse action against an inmate . . . because of . . . that prisoner's protected conduct." *Rhodes*, 408 F.3d at 567.

Legitimate Penological Goal: The prisoner bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. *Pratt*, 65 F.3d at 806. At that point, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. *See Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th Cir. 1995) (defendants had qualified immunity against retaliation claim based on their decision to transfer prisoner to preserve internal order and discipline and maintain institutional security). "A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were 'unnecessary to the maintenance of order in the institution.'" *Watison*, 668 F.3d at 1114-15.

C/O Lisk argues that the complaint fails because there was a legitimate penological goal for the three RVRs. In her view, she was preventing food theft, as shown by the three RVRs.

Her argument ignores the fact that Mr. Patkins alleges that each of the three RVRs was false. *See* Docket No. 1 at 7 (C/O Lisk "inflicted a false rules violation report" on December 22, 2014); *id.* at 10 (she "inflicted another false RVR" on April 11, 2015); *id.* at 11 (she "again inflicted a false RVR" on July 30, 2015). The complaint's allegations that C/O Lisk wrote three false RVRs, combined with the complaint's allegation that her actions "advanced no legitimate correctional goal," *id.* at 5, suffices to allege the absence of a legitimate penological goal, as there does not appear to be any legitimate correctional goal served by falsifying disciplinary charges. Moreover, as discussed earlier, Mr. Patkins alleges numerous other forms of retaliation C/O Lisk

engaged in (such as causing him to miss work and meals), none of which on their face appear to have a legitimate penological purpose.

C/O Lisk also seems to take the position that whatever was stated by prison officials in the documents attached to the complaint should be treated as fact, and when so considered, those statements show that Mr. Patkins' claim has no merit. The Court disagrees that the exhibits can be used this way at the pleading stage. By attaching to his complaint the documents generated by prison officials, a plaintiff does not adopt the content of those documents as true. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995). "Rather than accepting every word in a unilateral writing by a defendant and attached by a plaintiff to a complaint as true, it is necessary to consider why a plaintiff attached the documents, who authored the documents, and the reliability of the documents." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998) (declining to apply blanket rule that document attached is adopted in toto "in the case of letters written by the opposition for what could be self-serving purposes"). Nothing in the complaint manifests any intent by Mr. Patkins to adopt all the prison officials' statements as true or as reflective of his position. C/O Lisk's statements are no more attributable to Mr. Patkins than are his statements attributable to her. Giving the *pro se* complaint the liberal construction to which it is entitled, the Court concludes that the complaint adequately pleads the lack of a legitimate penological goal for the adverse actions C/O Lisk took.

<u>Chilling Effect</u>: To prevail on a retaliation claim, a plaintiff must show a chilling effect on his First Amendment rights. The proper inquiry is "'whether an official's acts would chill *or* silence a person of ordinary firmness from future First Amendment activities.'" *Rhodes*, 408 F.3d at 568 (quoting *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999).

C/O Lisk argues that Mr. Patkins did not show a chilling effect because he continued to pursue prison grievances.

The fact that Mr. Patkins continued to file inmate appeals and complain about C/O Lisk does not negate the existence of this element because the chilling effect need not be so great as to totally silence the inmate. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the

retaliation claim at the motion to dismiss stage"); *Rhodes*, 408 F.3d at 568-69 (rejecting argument that inmate did not state a claim for relief because he had been able to file inmate grievances and a lawsuit). The complaint alleges that C/O Lisk's actions "would chill a person/inmate of ordinary firmness from exercise of First Amendment activities," Docket No. 1 at 5, and then describes events supporting that assertion, i.e., C/O Lisk caused Mr. Patkins to get the worst job assignments; occasionally caused him to miss his meals; occasionally caused him to miss work; on several occasions wrote false rule violation reports against him; denied him access to priority ducats for mandatory appointments; and tried to get his cellmate to move out. *See id.* at 6-12. Especially when viewed collectively, these adverse actions could chill an inmate of ordinary firmness. These allegations of the complaint suffice to plead the chilling effect element of a retaliation claim.

        3.      <u>No Qualified Immunity On The Pleading</u>

C/O Lisk urges that she is entitled to qualified immunity on the retaliation claim. To determine whether an official is entitled to qualified immunity, the Court must decide whether the facts alleged show the official's conduct violated a constitutional right; and, if so, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see also Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling *Saucier*'s requirement that qualified immunity analysis proceed in a particular sequence).

C/O Lisk argues that she is entitled to qualified immunity because she "did nothing more than prevent food theft by Plaintiff. This is a legitimate correctional goal." Docket No. 12 at 6. She further argues that even if doing so could amount to a constitutional violation, she reasonably could have believed her actions were lawful. *Id.*

Her arguments fail to persuade the Court that she is entitled to qualified immunity at this stage. First, as discussed above, the complaint adequately alleges the absence of a legitimate correctional goal for the three RVRs, as it alleges that the charges of food theft were false. C/O Lisk is not entitled to qualified immunity on the theory that no constitutional violation has been alleged. Second, she is not entitled to qualified immunity on the theory that she reasonably could

have believed her actions were lawful because the inmate's right to be free from retaliation was clearly established well before 2014. *See generally Entler*, slip op. at 23-24. Accepting the allegations of the complaint as true, no reasonable officer would have thought it lawful in 2014-2015 to retaliate by taking the adverse actions against an inmate for threatening to file a grievance and for filing grievances. C/O Lisk is not entitled to qualified immunity at the pleading stage.

Finally, there is an important caveat to the *pro se* plaintiff: The Court has merely determined that the complaint is legally sufficient to allege a retaliation claim. The Court has not made any determination about Mr. Patkins' ability to prove his claim.

B.    Request For Appointment Of Counsel

Plaintiff has requested appointment of counsel. Plaintiff is now referred to the Federal Pro Bono Project in the manner set forth below so that an attorney may be located for the limited purpose of conducting discovery and representing him in respect to any motions.

(1)    The Clerk shall forward to the Federal Pro Bono Project: (a) a copy of this order and (b) a copy of the complaint.

(2)    Upon an attorney being located to represent Plaintiff, that attorney shall be appointed as counsel for Plaintiff in this matter until further order of the Court. *The scope of the appointment will be limited to representation of Plaintiff in conducting discovery in preparation for motion(s) for summary judgment and in handling/arguing such motion(s).*

(3)    All proceedings in this action are stayed until four weeks from the date an attorney is appointed to represent Plaintiff in this action, or until further order of the Court.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is **DENIED**. Docket No. 12.

This action is stayed until four weeks from the date an attorney is appointed to represent Plaintiff in this action, or until further order of the Court.

**IT IS SO ORDERED**.

Dated: October 23, 2017

_____
EDWARD M. CHEN
United States District Judge